UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 17-cr-10141-DPW |
| | ) | |
| 2. DOMINGO GONZALEZ MARTINEZ | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On February 26, 2018, the defendant pleaded guilty to Count 1 of the Superseding Indictment which charged him with conspiracy to possess with intent to distribute fentanyl, heroin and cocaine in violation of 21 U.S.C. 846 and 841. No mandatory minimum was charged. There is a plea agreement in this case. The revised Pre-sentence Report prepared by the United States Probation Office, revised May 24, 2018 (PSR), concluded that the defendant's advisory guideline sentencing range (GSR) was 87 to 108 months, based on TOL 29 and CHC I. (PSR, p. 46). There has been no safety valve proffer. The defendant believes that his GSR should be 70-87 months, based on TOL 27, which involves a difference in calculation of drug weight impacting the BOL. The government will seek a U.S. Guideline range sentence, based on the guideline range as calculated by the Court at the time of sentencing. The government does not anticipate the need for an evidentiary hearing at sentencing.

**USSG Calculation**. As indicated in the plea agreement, the parties disagreed about the Defendant's base offense level. Defendant believes it should be 30 (400 grams to 1.2 kilograms of fentanyl); and the Government believed it should be 32 (1.2 kilograms to 4 kilograms of fentanyl).

1

The drug weight involving this defendant, known as GUEVA on the wire interceptions, is based on evidence from lightly coded intercepted calls and surveillance. There were no seizures involving this Defendant. In fairness, the varying drug weight involves the interpretation of the call on February 18, 2017, set forth at PSR ¶ 31, and more specifically, what "three left at sixty" means. During the investigation, the government believed it meant three kilograms at $60,000, and investigators set up surveillance in an effort to seize the drug. However, after following PATRONE to GUEVA's Corneil Market, and seeing a young man drop a black bag into PATRONE's car, PATRONE made the surveillance vehicle as he drove away, and PATRONE pulled over and parked. PSR, ¶¶ 32-34. Investigators broke off surveillance, and eventually picked up PATRONE again, where they observed him walk back into his stash house at 277 Merrimack Street. PSR, ¶ 34. As a result of the failed effort to seize the drugs on February 18, the government does not know for sure the amount "three left at sixty" represents. Given the uncertainty, defendant's explanation of the drug weight between 400 grams and 1.2 kilograms is reasonable.

**Brokering Deals v. Source of Supply.** This Defendant purports to have "middled" or brokered deals for PATRONE to obtain drugs from other people this Defendant knows. He claims that his limited involvement meant he did not understand the impact he was having by selling poison in his own community. He suggests that he is somehow less culpable because brokering suggests that he was hands-off, arranging for PATRONE to buy his drugs from others. The calls belie those claims. This Defendant personally obtained and supplied drugs to PATRONE from his bodega, and was paid by PATRONE directly for the drugs supplied. (e.g. PSR, ¶¶ 37-40). PATRONE returned poor quality drugs he obtained from this Defendant directly to him in his store. (PSR, ¶ 35). While the Defendant may have bought from one or

more persons, and then sold to PATRONE, his activity is more than "brokering." Any person in the chain of drug distribution who is not at the top, or on the street, can claim to be in the middle. This Defendant was a supplier. He supplied PATRONE. While Defendant was certainly not the only supplier, he was one of them. He should not get a pass by characterizing his conduct as brokering. He lives in the Lawrence community; his bodega serves customers in that community. It is simply not credible that he does not see or has not learned about the impact fentanyl is having on his community. He was part of the problem. Despite his caring for his family, he chose drug dealing as a way to make money.

**Sentencing Disparity.**

This defendant played a significant role in the conspiracy by supply PATRONE with fentanyl to sell. This Court departed downward for MARCANO (stash house operator, with gun, to be deported, TOL 31, 60 months); and GONZALEZ (major courier, to be deported, 54 months). If this Court finds this Defendant to be TOL 27, he is most similar to GONZALEZ, who was also TOL 27, and also expected to be deported. Both the defendant, as a supplier, and GONZALEZ, as a major courier, were essential members of the conspiracy.

For the foregoing reasons, the government will seek a sentence at the low end of the advisory GSR, as calculated by the Court at the time of sentencing.

                                                Respectfully submitted,

                                                ANDREW E. LELLING,
                                                United States Attorney

By:   /s/ Susan Winkler
        Susan Winkler
        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

  I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 28, 2018.

            /s/ Susan Winkler
            Susan Winkler
            Assistant U.S. Attorney